UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDA BROWN,

Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_____________________________/

Case No. 10-12960

Avern Cohn
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 17)**

## I. PROCEDURAL HISTORY

### A. Proceedings in this Court

On July 27, 2010, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance and supplemental security income benefits. (Dkt. 4). This matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 17).

### B. Administrative Proceedings

Plaintiff filed the instant claims on March 6, 2007, alleging that she became

unable to work on October 7, 2006. (Dkt. 9, Tr. at 74-89). The claim was initially disapproved by the Commissioner on May 9, 2007. (Dkt. 9, Tr. at 49-57). Plaintiff requested a hearing and on May 18, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Jerome B. Blum, who considered the case *de novo*. In a decision dated June 23, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 9, Tr. at 6-18). Plaintiff requested a review of this decision on August 3, 2009. (Dkt. 9, Tr. at 5). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 14E, Dkt. 9, Tr. at 4), the Appeals Council, on May 27, 2010, denied plaintiff's request for review. (Dkt. 9, Tr. at 1-4).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II. FACTUAL BACKGROUND

### A. ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Dkt. 9, Tr. at 27). Plaintiff's relevant work history included approximately 12 years as a restaurant manger, front desk clerk, and a case aide. (Dkt. 9, Tr. at 16-17, 113). In denying plaintiff's claims, defendant Commissioner considered a cervical herniated disc, acoustic neuroma with residuals, and depression as possible bases of disability. (Dkt. 9, Tr. 112, 133).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since October 7, 2006. (Dkt. 9, Tr. at 11). At step two, the ALJ found that plaintiff's cervical disc radiculopathy, breast cancer, status-post lumpectomy, and depression were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 9, Tr. at 11-12). At step four, the ALJ found that plaintiff could not perform her previous work as a restaurant manager. (Dkt. 9, Tr. at 16). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 9, Tr. at 17).

B. Plaintiff's Claims of Error

According to plaintiff, the ALJ should have found her obesity to be a severe impairment and then should have followed SSR 02-1p. Plaintiff also alleges that she has submitted new and material evidence regarding a new diagnosis of fibromyalgia, which warrants the application of SSR 99-2p, which applies to cases involving chronic fatigue syndrome. Plaintiff also claims that her impairments met or equaled the Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).

Plaintiff also claims that the ALJ did not appropriately assess her credibility by focusing on the lack of treatment for her back pain, the lack of mental health treatment, and the lack of medication side effects other than drowsiness. According to plaintiff, taking the above reasons individually, the ALJ's opinion is flawed in each respect. First, plaintiff says she felt she was receiving "mental health treatment" when her treating physician prescribed Zoloft for her. Further, plaintiff asserts that the new material attached to her motion shows she was receiving mental health treatment through Eastwood Clinics. Plaintiff says that she postponed mental health treatment while she was in active treatment for her cancer. Next, plaintiff contends that the ALJ's assessment that she lacked "aggressive treatment" for her back problems is incorrect given that she underwent a course of physical therapy and received the epidural injections.

Plaintiff also argues that the ALJ incorrectly determined that she was not being given "real strong prescription analgesics," when in fact, the record reveals that she has been on numerous medications including various muscle relaxers and pain medications such as Motrin, Flexeril, Naproxen, Skelaxin, Darvocet, Robaxin, Lodine, Tylenol #3, Voltaren, Ultram and Anaprox/Naprosyn. In addition, the new evidence shows that plaintiff had allergic reactions to "Neurontin, Vicodin and Tylenol rapid release gelcaps." While the ALJ recognized that plaintiff experienced "drowsiness" due to her medications, he improperly concluded that this side effect did not compromise her ability to work. Plaintiff's long-term treating physician, Dr. Singh, confirmed that she has "drowsiness due to pain medication," and indicated that her pain or other symptoms were severe enough to interfere with attention and concentration needed to perform even simple work tasks – on a constant basis. (Tr. 297). According to plaintiff, the ALJ also failed to review her pain and other symptoms under SSR 96-7p.

Plaintiff also argues that the ALJ incorrectly determined that her long-term treating physician's opinions concerning plaintiff's functional capabilities were not credible. The long-term treating physician, Dr. Shalini Singh, completed numerous documents reflecting an individual who is "incapable of even low stress jobs." (Tr. 297). Plaintiff points to documented findings identified by her various

physicians including abnormal laboratory results, among which was an increased sedimentation rate, MRI findings regarding the cervical spine and repeated, consistent findings of tenderness in various body parts, along with muscle spasms, all of which have finally led to the diagnosis of fibromyalgia, as set forth in plaintiff's new evidence.

Plaintiff also asserts that her significant mental impairments have been documented both by her treating physicians, and by the consulting examiner for the State Agency, as well as in the new evidence submitted from Eastwood Clinics. Plaintiff argues that the ALJ improperly gave "little weight" to the State Agency consulting examiner, Dr. Kelwala, who substantiated her significant mental impairments, which included not only depression, but post traumatic stress disorder from witnessing her mother be murdered when she was a young teenager. The ALJ's various reasons for giving "little weight" to Dr. Kelwala included the fact that plaintiff was noted to have "normal contact with reality" when she was evaluated by Dr. Kelwala. However, plaintiff points out that it was Dr. Kelwala who documented her auditory hallucinations.

In summary, plaintiff contends that the ALJ concluded, without substantial evidence for his finding, that she had the residual functional capacity for unskilled, sedentary work with an option to sit or stand at will, contrary to the opinion of the long-term treating physician, Shalini Singh, M.D. According to plaintiff, had the

ALJ found Dr. Singh's opinions to be credible, the vocational expert would have been given more accurate hypothetical questions based upon the long-term treating physician's assessment of plaintiff's residual functional capacity.

C. Commissioner's Motion for Summary Judgment

The Commissioner urges the Court to reject plaintiff's argument that her conditions met or equaled Listing 12.04, pertaining to affective disorders, or Listing 12.06, pertaining to anxiety related disorders because plaintiff has failed to satisfy her burden of demonstrating disability under a listing, that her condition satisfied all of the requirements of a listing. According to the Commissioner, plaintiff makes no attempt to do so. Instead, she simply argues that the ALJ erred by not considering the effects of her obesity and other physical conditions together with her depression and PTSD. The Commissioner acknowledges that the ALJ did not explicitly assess the effects of her obesity, but points out that plaintiff cites nothing in the record showing that her obesity and other physical conditions exacerbated her mental conditions such that they would meet or equal a listing. And, no mental health professional found that plaintiff's obesity affected her mental conditions. Indeed, Dr. Kelwala noted that plaintiff was five feet and nine inches tall and weighed 233 pounds, but stated that plaintiff was only "slightly overweight" and nothing in Dr. Kelwala's report suggests that plaintiff's obesity impacted her mental conditions. (Tr. 176).

Plaintiff also argues that this case should be remanded for consideration of "new and material evidence" that she had fibromyalgia. Although not explicitly stated, plaintiff is apparently arguing that this evidence, submitted for the first time to this Court, supports a remand pursuant to sentence six of 42 U.S.C. § 405(g). The Commissioner asserts that plaintiff has failed to show that the new evidence is material and that there is good cause for her failure to incorporate this evidence earlier. The Commissioner contends that plaintiff fails to even argue that there was good cause for not submitting the evidence until now. The Commissioner also points out three flaws with plaintiff's contention that if she had presented evidence that she was diagnosed with fibromyalgia, the ALJ would have been required to review the evidence under Social Security Ruling (SSR) 99-2p, concerning chronic fatigue syndrome. First, plaintiff was not diagnosed with fibromyalgia until July 2009, the month after the ALJ's decision and there is no indication as to when the condition began. Second, a diagnosis of fibromyalgia does not automatically entitle a claimant to disability benefits. Third, SSR 99-2p does not address how an ALJ should consider a claimant's fibromyalgia. It simply notes that there is an overlap in symptoms between chronic fatigue syndrome and fibromyalgia. Thus, the Commissioner urges the Court to reject plaintiff's argument for remand pursuant to sentence six.

According to the Commissioner, the ALJ reasonably discounted Dr. Singh's

opinions because they were not supported by her own findings and were inconsistent with the other medical evidence. The administrative record contains four treatment notes signed by Dr. Singh. (Tr. 219-20, 227, 243, 269-70). Although Dr. Singh's treatment notes documented some abnormalities, they also contained normal findings or did not document examination findings pertaining to plaintiff's allegedly debilitating conditions. Plaintiff first presented to Dr. Singh in January 2007 with complaints of neck and shoulder pain as well as occasional lumbar spine pain. (Tr. 243). An examination revealed some abnormalities, including tachycardia and right trapezius pain. (Tr. 243). However, other findings were normal. Plaintiff had no lower back tenderness to palpation, normal muscle strength and sensation, normal range of shoulder motion, and no swelling. (Tr. 243). There was no documentation of depression or PTSD. In July 2007, plaintiff presented to Dr. Singh with complaints of left ankle and chronic back pain. (Tr. 227). Dr. Singh noted only mild ankle swelling, a reduced range of flexion, and reduced lateral rotation due to pain. (Tr. 227). Dr. Singh did not mention plaintiff's shoulder condition or any mental condition. In February 2008, plaintiff presented to Dr. Singh with complaints of upper and middle back pain and a recent onset of depression. (Tr. 219). Plaintiff had a guarded gait, pain with forward spine flexion and backwards extension, guarding while arising from a chair, and pain to palpation over her bilateral upper trapezius muscles and in the vertebral

column. (Tr. 220). Dr. Singh noted that she was depressed. (Tr. 220). The final treatment note in the record from Dr. Singh, written in February 2009, describes fewer abnormalities. (Tr. 269-70). Dr. Singh noted a decreased range of back motion, but reported that plaintiff's functioning was improved and that her mood and affect were appropriate. (Tr. 270). There was no mention of plaintiff's shoulder condition. (Tr. 270). According to the Commissioner, Dr. Singh's treatment notes document abnormalities, particularly in February 2008, however they also document normal findings and do not consistently record examination findings for her allegedly debilitating conditions. Thus, the Commissioner contends that Dr. Singh's extreme opinions regarding plaintiff's functioning are not supported by her treatment notes.

The Commissioner argues that the ALJ also appropriately declined to give Dr. Singh's opinion controlling weight because it was inconsistent with the overall medical evidence of record. (Tr. 16). Specifically, in evaluating the credibility of plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, the ALJ discussed several ways in which the medical evidence did not support a conclusion that plaintiff had debilitating symptoms. (Tr. 15-16). For example, the ALJ noted that there was little evidence in the form of diagnostic imaging to support plaintiff's complaints of severe back and neck pain and that plaintiff received only limited treatment for her back and neck pain and her mental

condition. (Tr. 15-16). Although Dr. Singh opined that plaintiff had significant limitations due to back and shoulder pain, the record contains almost no support in the form of diagnostic imaging. (Tr. 260-62, 264-66, 271-72). A cervical spine x-ray performed in November 2006 was normal. (Tr. 254). A December 2006 shoulder x-ray was negative for any acute process. (Tr. 158). Finally, a January 2007 cervical spine MRI revealed a disc bulge at C5-C6 with a tiny protrusion, but no central canal stenosis. (Tr. 242). Thus, the Commissioner asserts that Dr. Singh's opinion was unsupported by the limited diagnostic imaging.

According to the Commissioner, the ALJ also correctly noted that plaintiff had not undergone aggressive treatment for her musculoskeletal conditions aside from epidural injections and a single course of physical therapy, which belies Dr. Singh's finding that plaintiff had extreme limitations. Aside from medication, it appears that plaintiff only underwent one epidural injection and one course of physical therapy. Between December 2006 and February 2007, plaintiff attended nine physical therapy appointments due to cervical spasm and bilateral shoulder pain and in April 2007, received an injection at a pain clinic. (Tr. 172, 232). Plaintiff reported in June 2007 that the injection had brought no relief and that physical therapy increased her pain. (Tr. 229). In February 2008, Dr. Singh recommended that Plaintiff return to the pain clinic for a second injection and restart physical therapy if it was effective (Tr. 220), but there is no evidence that

Plaintiff had the second injection. Thus, the Commissioner asserts that the ALJ correctly concluded that plaintiff's lack of aggressive treatment, aside from a single injection and a course of physical therapy, conflicts with Dr. Singh's extreme opinions.

Similarly, the ALJ noted that plaintiff never received any mental health treatment aside from a prescription for Zoloft from Dr. Singh. (Tr. 16). This fact supports the ALJ's finding that Dr. Singh's opinions were inconsistent with the overall medical evidence of record and it was, therefore, reasonable for the ALJ to conclude that if plaintiff was limited to the degree suggested by Dr. Singh due to her mental conditions, she would have received more significant treatment than medication management by her family doctor.

Plaintiff argues that the ALJ erred in giving little weight to Dr. Kelwala's assessment that she had a GAF score of 45 to 50, representing serious symptoms. The Commissioner points out that opinions from medical sources who examined a claimant only once, such as Dr. Kelwala, are not entitled to controlling weight and are evaluated under several factors listed at 20 C.F.R. §§ 404.1527(d) and 416.927(d), including how well the medical source supports her opinion. For example, the ALJ noted that Dr. Kelwala reported that plaintiff had normal contact with reality, fair insight, and a normal stream of mental activity. (Tr. 16, 176). Although plaintiff reported regularly hearing her deceased mother's voice, Dr.

Kelwala noted that she was fully oriented and that she denied delusions or persecutory trends. (Tr. 176). Thus, the ALJ reasonably discounted the GAF score assessed by Dr. Kelwala.

Finally, the Commissioner contends that the ALJ reasonably discounted plaintiff's own statements for a number of reasons, including that there was little evidence in the form of diagnostic imaging to support her complaints of severe back and neck pain and that she received only limited treatment for her conditions. The Commissioner also points out that while plaintiff now claims that she did not seek mental health treatment because she was being treated for breast cancer, there is no evidence in the record to support that conclusion. Thus, according to the Commissioner, substantial evidence supports the ALJ's finding that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they conflicted with the ALJ's residual functional capacity assessment and the ALJ's decision should be affirmed.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B. <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. Analysis and Conclusions

1. Sentence Six

While plaintiff asserts that she has provided "new and material evidence", plaintiff does not specifically request a sentence six remand or develop any argument on this issue. Sentence six states the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C.A. § 405(g). The undersigned cannot otherwise consider

the records submitted to the appeals council and the plaintiff does not offer any analysis as to why the evidence is material or an analysis of good cause for the failure to incorporate the evidence into the record earlier. Any issue not raised directly by plaintiff is deemed waived. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

2. The listings

The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001). To meet a listed impairment, a claimant must satisfy all of the criteria in the listing. *Roby v. Comm'r of Soc. Sec.*, 48 Fed.Appx. 532, 536 (6th Cir. 2002), citing, *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r of Soc. Sec*, 34 Fed.Appx. 202, 203 (6th Cir. 2002). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003).

In the view of the undersigned, the Commissioner correctly points out that there is no evidence in the record whatsoever that plaintiff's obesity affected her mental impairments and no physician, treating or otherwise, offered an opinion on this issue. Plaintiff has not argued that the ALJ's analysis as to the Listings was in any other way insufficient or incorrect. The undersigned finds no basis to disturb the ALJ's findings in this regard.

3. Treating physician evidence

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a

treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, * 16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

In this case, the under ALJ's conclusion that Dr. Singh's opinions are not entitled to controlling weight is well-supported by substantial evidence. The ALJ expressly considered the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.

Specifically, the ALJ considered the lack of "aggressive treatment." While the term "aggressive" might be vague in and of itself, the ALJ made it clear that he found a single course of physical therapy and a single epidural injection, along with medications, to be inconsistent with the level of function in Dr. Singh's opinions. This is a reasonable conclusion, and is supported by the record, particularly given the results of the few objective diagnostic tests, which do not suggest such severe limitations as to preclude plaintiff from all work. Dr. Singh referred plaintiff for both neurological and neurosurgical consultations, but there is no evidence that she followed up. In addition, there is no evidence that she followed up at the pain clinic, as recommended.

Given the rather extreme limitations imposed by Dr. Singh, it was also reasonable to conclude that some mental health treatment beyond a single prescription for Zoloft was warranted to support those limitations. While plaintiff points to the auditory hallucinations documented by the consulting examiner, the undersigned notes that plaintiff does not appear to have made such claims to any treating physician or other practitioner. Moreover, plaintiff offers no argument or other support for the notion that merely because she sees her mother's "spirit" and hears her voice providing her guidance that she is somehow functionally limited.

4. Credibility and RFC

For these same reasons, the ALJ found plaintiff's claims to not be entirely

credible. SSR 96-7p provides guidance on the factors to be considered when evaluating credibility:

> Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:
>
> * The medical signs and laboratory findings;
>
> * Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and
>
> * Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The adjudicator must then evaluate all of this information and draw appropriate inferences and conclusions about the credibility of the individual's statements. *Id*.

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding for many of the same reasons that the undersigned concluded that the ALJ properly rejected Dr. Singh's opinions. The ALJ's obligation to assess credibility extends to the claimant's subjective

complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, based on the record, the ALJ found that plaintiff had an extremely limited RFC and could only perform unskilled, sedentary work with the option to sit or stand at will. The undersigned concludes that the ALJ reasonably accommodated plaintiff's limitations and his decision is supported by substantial evidence.

In addition, the failure to seek treatment for a period of time may be a factor

to be considered against a claimant, *Hale v. Sec'y of Health and Hum. Serv.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). While plaintiff now claims that she did not seek mental health treatment because of her cancer treatment, there is no evidence in the record to support this claim. Thus, the ALJ properly concluded that the lack of mental health treatment showed that plaintiff's mental health impairment was not as severe as she claimed.

Plaintiff claims that the ALJ did not follow SSR 96-7p. The ALJ, in commenting on plaintiff's credibility as it relates to pain symptoms, must follow the requirements of, among other provisions, 20 C.F.R. § 404.1529 as well as SSR 96-7p, which provides, in part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;

> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Plaintiff's argument in this area is focused on the failure to the ALJ to credit the side effects of her medications. However, plaintiff does not point to any evidence in the record where she complained to her treating physicians regarding drowsiness or that the medications she was taking at the time of the hearing (Tamoxifen, Ultram, and Zoloft) caused drowsiness. "Allegations of a medication's side effects must be supported by objective medical evidence." *Daniels v. Comm'r of Soc. Sec.*, 2008 WL 4394356 (W.D. Mich. 2008), citing, *Farhat v. Sec'y of Health and Hum. Servs.*, 1992 WL 174540, *3 (6th Cir. 1992); *Bentley v. Comm'r of Soc. Sec.*, 23 Fed.Appx. 434, 435 (6th Cir. 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec'y of Health and Hum. Servs.*, 1993

WL 291301, *7 (6th Cir.1993) (no objective medical evidence supported claimant's allegation that medication made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant); *see also Cross v. Comm'r of Soc. Sec.*, 2008 WL 5071714, *6 (W.D. Mich. 2008). There is evidence that her physicians warned her about the drowsiness side effects of flexeril and neurontin, there is nothing in the record, and plaintiff points to nothing, about the side effects of the medications she was taking at the time of the hearing. The ALJ thoroughly discussed the appropriate factors in assessing the impact of plaintiff's pain complaints on her ability to function. And, the ALJ reasonably concluded that plaintiff's pain did not preclude her from performing unskilled sedentary work with an option to sit/stand at will.

As set forth above, an ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, and the undersigned finds no basis to disturb the ALJ's credibility findings, or any other findings made by the ALJ. In light of the medical and other evidence discussed above, the undersigned concludes that the VE's opinion is consistent with record, and can properly be considered substantial evidence. Thus, the undersigned concludes that

there is an insufficient basis on this record to overturn the ALJ's credibility determination and that the hypothetical relied on properly reflected plaintiff's limitations.

D. Conclusion

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV. RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 26, 2011

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Eva I. Guerra, Theresa M. Urbanic, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov